No. 23-30005

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

SIDNEY JOSEPH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:99-cr-00238

**APPELLANT'S BRIEF**

CLAUDE J. KELLY
Federal Public Defender
Eastern District of Louisiana

SAMANTHA J. KUHN
Assistant Federal Public Defender
Office of the Federal Public Defender
500 Poydras Street, Suite 318
Hale Boggs Federal Building
New Orleans, Louisiana 70130
(504) 589-7930
Samantha_Kuhn@fd.org

# CERTIFICATE OF INTERESTED PERSONS

*United States v. Sidney Joseph*
No. 23-30005

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. *Defendant-Appellant:* Sidney Joseph

2. *Counsel for Defendant-Appellant:* Federal Public Defender Claude J. Kelly and Assistant Federal Public Defender Samantha J. Kuhn.

   *Former Counsel for Defendant-Appellant*: Former Federal Public Defender Virginia Laughlin Schlueter; Assistant Federal Public Defender Valerie Welz Jusselin; George Chaney, Jr.; John Harvey Craft; Eric Anthony Wright.

3. *Counsel for Plaintiff-Appellee:* United States Attorney Duane A. Evans; Assistant United States Attorneys Kevin G. Boitmann, Diane Hollenshead Copes, and Churita H. Hansell.

   *Former Counsel for Plaintiff-Appellee*: Former United States Attorneys Peter Strasser and Jim Letten; Assistant United States Attorneys John F. Murphy.

   */s/ Samantha Kuhn*
   SAMANTHA J. KUHN
   Assistant Federal Public Defender
   Dated: April 28, 2023

ii

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Sidney Joseph respectfully requests oral argument in this appeal, which arises from a district court order transferring nearly all of his savings held in a BOP inmate trust account to the clerk of court for payment on his restitution obligation. The appeal raises important and complex questions of statutory interpretation as well as the proper application of this Court's precedent. Oral argument would thus facilitate resolution of Mr. Joseph's appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................ii

STATEMENT REGARDING ORAL ARGUMENT ............................. iii

TABLE OF AUTHORITIES ................................................................. vi

STATEMENT OF JURISDICTION .......................................................1

STATEMENT OF THE ISSUES ...........................................................2

STATEMENT OF THE CASE ..............................................................3

SUMMARY OF THE ARGUMENT ......................................................8

ARGUMENT .......................................................................................9

    I.    Standard of Review. ...............................................................9

    II.    Legal Framework. ..................................................................9

    III.    The district court erred in concluding that the government's lien under § 3613(c) had not expired. ............ 11

        A.    Mr. Joseph's construction is supported by the text, structure, and context of § 3613(c). ............................ 13

        B.    Mr. Joseph's construction is further supported by the legislative history of § 3613. ................................. 17

    IV.    The district court erred in concluding that a lien under § 3613(c) entitled the government to a turnover order. ....... 22

        A.    The district court's turnover order was not issued pursuant to any federal or state law, as required. ...... 23

        B.    Even if the government properly pursued enforcement of a valid lien, it was not entitled to seize all of Mr. Joseph's wages. ................................. 26

V.   The district court also abused its discretion by leaving
     Mr. Joseph with only $400 in his inmate trust account ....... 27

CONCLUSION ............................................................................. 30

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Atchison v. Collins*, 288 F.3d 177 (5th Cir. 2002) .................................. 13

*Corley v. United States*, 556 U.S. 303 (2009) .......................................... 14

*Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*, 968 F.3d 454 (5th Cir. 2020) .................................................................................. 16

*Gundy v. United States*, 139 S. Ct. 2116 (2019) ................................... 12

*Ross v. Blake*, 578 U.S. 632 (2016) ........................................................ 19

*Russello v. United States*, 464 U.S. 16 (1983) ........................................ 16

*United States v. Berry*, 951 F.3d 632 (5th Cir. 2020) ............................ 24

*United States v. Brewer*, 699 F. App'x. 318 (5th Cir. 2017) .................... 25

*United States v. Butt*, 765 F. App'x 108 (5th Cir. 2019) ........................ 25

*United States v. Cardwell*, 842 F. App'x 937 (5th Cir. 2021) ............. 9, 24

*United States v. Carson*, 55 F.4th 1053 (6th Cir. 2022) ........................ 27

*United States v. Diehl*, 848 F.3d 629 (5th Cir. 2017) ............................ 25

*United States v. Elashi*, 789 F.3d 547 (5th Cir. 2015) ............................. 9

*United States v. Hughes*, 914 F.3d 947 (5th Cir. 2019) ....................... 5, 7

*United States v. Lauderdale Cnty., Miss.*, 914 F.3d 960 (5th Cir. 2019) 16

*United States v. Messervey*, 182 F. App'x 318 (5th Cir. 2006) ................ 25

*United States v. Mire*, 838 F.3d 621 (5th Cir. 2016) .............................. 24

*United States v. Onyeri*, 996 F.3d 274 (5th Cir. 2019) ........................... 23

*United States v. Phillips*, 303 F.3d 548 (5th Cir. 2002) ......................... 23

*United States v. Rand*, 924 F.3d 140 (5th Cir. 2019) ...................... 24, 27

*United States v. Taylor*, 142 S. Ct. 2015 (2022) .................................... 16

*Warger v. Shauers*, 574 U.S. 40 (2014) ................................................. 20

## STATUTES

15 U.S.C. § 1673 ................................................................................. 10, 26

18 U.S.C. § 3231 ...................................................................................... 1

18 U.S.C. § 3613 (1990) .......................................................................... 17

18 U.S.C. § 3613(a) ... iv, 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 22, 23, 24, 26

18 U.S.C. § 3613(a) (1990) ............................................................... 18, 19

18 U.S.C. § 3613(a)(3) ..................................................................... 10, 22, 26

18 U.S.C. § 3613(b) ........................................... 11, 12, 13, 15, 16, 17, 20

18 U.S.C. § 3613(b) (1990) ........................................................ 17
18 U.S.C. § 3613(b) (1996) ........................................................ 18
18 U.S.C. § 3613(c) ....................... 4, 5, 7, 8, 11, 12, 13, 14, 15, 16, 17, 22
18 U.S.C. § 3613(c) (1996) ........................................................ 19
18 U.S.C. § 3613(f) .................................................................... 10
18 U.S.C. § 3664 ........................................... 3, 4, 5, 7, 9, 21, 28, 29
18 U.S.C. § 3664 (1996) ............................................................. 21
18 U.S.C. § 3664(k) ..................................................... 21, 28, 29
18 U.S.C. § 3664(m) ........................................................... 9, 21
18 U.S.C. § 3664(n) ......................................................... 3, 4, 5, 7
28 U.S.C. § 1291 ........................................................................ 1
28 U.S.C. § 3205 ............................................................... 24, 27

## RULES

28 C.F.R. § 545.11 ...................................................................... 6
28 C.F.R. § 545.11(d) ........................................................... 6, 29

## OTHER AUTHORITIES

Cong. Rec. S3379 (Apr. 16, 1996) ............................................. 21
H.R. 665, 104th Cong. (Dec. 22, 1995) .................................... 20
Pub. L. 104-133, §§ 201-207, 110 Stat. 1214, 1227-39 (Apr. 24, 1996)
    ("AEDPA") ..................................................................... 18, 20

# STATEMENT OF JURISDICTION

The district court had original jurisdiction over this case under 18 U.S.C. § 3231. This appeal is from a final order by the district court directing BOP to transfer funds in the Appellant's inmate account to the clerk of court for payment on his restitution obligation. This Court has appellate jurisdiction to review that final order under 28 U.S.C. § 1291. The Appellant filed a timely notice of appeal from the district court's order on January 4, 2023. ROA.605-06.

## STATEMENT OF THE ISSUES

Did the district court abuse its discretion by issuing a "turnover order" directing the Bureau of Prisons to transfer all but $400 of Mr. Joseph's inmate account to the clerk of court for restitution payment?

**STATEMENT OF THE CASE**

In 2001, Appellant Sidney Joseph was convicted of bank robbery, carjacking, and firearm charges, and the district court sentenced him to 462 months of imprisonment. ROA.104, 169. The court also ordered him to pay a total of $24,025.00 in restitution to two financial institutions. ROA.104. The judgment ordered that the payment of restitution "shall begin while the defendant is incarcerated" and, upon his release, "any unpaid balance shall be paid at a rate of $400.00 per month." ROA.104. That judgment was entered September 17, 2001. ROA.104.

On September 23, 2022, the government filed a "Motion for an Order Authorizing the Bureau of Prisons to Transfer Funds Held in the Defendant's Inmate Trust Account to the Court Clerk Pursuant to 18 U.S.C. §§ 3613(a) and 3664(n)." ROA.557-61. The motion asserted that Mr. Joseph had so far paid $2,772.03 towards restitution while in prison and owed a balance of $21,252.97. ROA.558. The motion further advised that the U.S. Attorney's Office recently learned that Mr. Joseph had accumulated $18,217.83 in his inmate trust account, which is an account where income from an inmate's prison employment is deposited, along with any money sent to the inmate by family or other outside sources.

ROA.557-58. The government requested that the district court issue a "turnover order" directing the BOP to transfer the entirety of Mr. Joseph's trust account to the court clerk for payment toward his restitution obligation. ROA.560.

The government asserted two statutory grounds for its request. ROA.558-59. First, the government argued that it was entitled to the requested order because "a lien arose against all of the defendant's property and rights to property, including the defendant's interest in funds held by the BOP in his inmate trust account," pursuant to 18 U.S.C. § 3613(c). ROA.558. Second, the government argued that the order was required under 18 U.S.C. § 3664(n), which states: "If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed." ROA.559. The government further argued that it did not need to "rely on formal collection remedies such as garnishment" because the funds were "already in the possession of an agency of the United States." ROA.559.

4

The district court appointed the Federal Public Defender's Office to represent Mr. Joseph in connection with the government's motion. ROA.564, 569. Mr. Joseph argued that the government's motion should be denied because its lien under § 3613(c) expired on September 17, 2021. ROA.585-86; *see also* § 3613(c) (stating that a lien "arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)"). He also argued that the government cited no federal or state law authorizing the district court to order the BOP to transfer Mr. Joseph's funds, making the request improper. ROA.586; *see also* 18 U.S.C. § 3613(a) ("The United States may enforce a judgment imposing a fine *in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law*." (emphasis added)). Finally, Mr. Joseph argued that § 3664(n) did not apply to his inmate account because that provision "refers to windfalls or sudden financial injections," not the "gradual accumulation of prison wages"—*i.e.*, the primary source of Mr. Joseph's funds. ROA.586-87 (quoting *United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019)).

Mr. Joseph also urged the district court to deny the government's motion because he has been diligently participating in the BOP's Inmate Financial Responsibility Program (IFRP) for over a decade. ROA.570-71, 584-85. The purpose of the IFRP is to help inmates meet their financial obligations by creating, and regularly monitoring compliance with, an individualized payment plan that takes into account the inmate's personal resources and institutional needs. ROA.584-85; *see also* 28 C.F.R. § 545.11 (IFRP Procedures). Mr. Joseph demonstrated that he has been making consistent payments under his plan, even doubling his quarterly payments in the last year. ROA.570-72, 577, 585, 587-88. He also explained that transfer of his entire account would prevent him from continuing to comply with his IFRP plan because there currently are no jobs available to him in his facility and, therefore, he has been making his quarterly restitution payments ($50 per quarter) from his savings. ROA.588-59; ROA.578 (signed IFRP payment plan). Noncompliance with the plan would subject him to numerous penalties. *See* 28 C.F.R. 545.11(d) (effects of non-participation); *see also* ROA.578 (Mr. Joseph agreeing to the $50/quarter IFRP plan and acknowledging the potential consequences of refusing to participate).

Following a reply from the government, ROA.592-97, the district court granted the government's motion based on § 3613(c), ROA.598-604. Adopting the reasoning of another district court judge, the court concluded that the government's restitution lien under § 3613(c) "continues for twenty years from the later of the entry of judgment or release from imprisonment of the person fined" and therefore the government had a valid, unexpired lien over Mr. Joseph's property. ROA.602-03 (quoting *United States v. Mann*, CR92-129, ECF No. 67, at p. 4 (W.D. Tex. Dec. 22, 2016)). Based on that conclusion, the court determined that the government could seek a turnover order to enforce the lien against Mr. Joseph's trust account and thus was "entitled to the relief it requests." ROA.603. The court ordered the BOP to turn over to the possession of the clerk of court all of Mr. Joseph's trust account, less $400 for prison expenses. ROA.603-04. Mr. Joseph filed a timely notice of appeal. ROA.605.[1]

---

[1] The district court did not expressly rule on the applicability of § 3664(n) but indicated that it did not believe that would be a valid basis for granting the motion. *See* ROA.600 n.17 ("It appears unlikely 18 U.S.C. § 3664(n) would provide a pathway for the Government to collect Defendant's prison wages in light of *United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019).").

## SUMMARY OF THE ARGUMENT

The government moved the district court to transfer Mr. Joseph's entire inmate trust account to the clerk of court as restitution payment, based on its assertion of a lien on Mr. Joseph's property rights under 18 U.S.C. § 3613(c). But, by the time of its motion, the government's lien had already expired under the statute. Moreover, the government's request failed to comply with the requirements and limitations imposed by other provisions of § 3613. Nevertheless, the district court granted the government's motion, erroneously concluding that the government's lien had not expired and that it was entitled to the relief it sought.

The district court's order was based on multiple misinterpretations of the applicable statute. The correct reading of the § 3613 establishes that the government's lien expired before it filed its motion and, even if it had not, the government was not entitled to the requested order because it failed to comply with other provisions of § 3613. Furthermore, the district court's decision to take all but $400 of Mr. Joseph's savings account was arbitrary and unreasonable under the circumstances, constituting an abuse of discretion. For all of these reasons, the district court's order must be reversed.

# ARGUMENT

## I.    Standard of Review.

This Court reviews "orders issued to enforce a restitution order for abuse of discretion." *United States v. Cardwell*, 842 F. App'x 937, 938 (5th Cir. 2021) (unpublished). "A district court necessarily abuses its discretion if its conclusion is based on an erroneous determination of the law." *United States v. Elashi*, 789 F.3d 547, 548 (5th Cir. 2015). "Questions of law, such as an issue of statutory interpretation, are reviewed de novo." *Cardwell*, 842 F. App'x at 938.

## II.    Legal Framework.

18 U.S.C. § 3664 governs the enforcement of restitution orders in criminal judgments. That statute provides two avenues for enforcing monetary restitution orders: one available to the victims themselves, and one available to federal prosecutors. *See* 18 U.S.C. § 3664(m). The victim-driven avenue requires the clerk of court to issue a certified "abstract of judgment" to the victim upon request, which then serves as a lien on the defendant's property once the victim registers or records the abstract with the state. § 3664(m)(1)(B). The other avenue authorizes the federal government to enforce an order of restitution on behalf of a victim "in the

manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title [*i.e.*, the statutes governing the enforcement of fines], or by all other available and reasonable means." § 3664(m)(1)(A).

In this case, the district court issued the requested turnover order based on 18 U.S.C. § 3613 (located in subchapter B of chapter 229). Section 3613(a) states that "[t]he United States may enforce a judgment imposing a fine [or restitution] in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law . . . against all property or rights to property of the person fined," subject to certain exceptions that incorporate provisions from other federal statutes. § 3613(a); *see also* 18 U.S.C. § 3613(f). One of those three exceptions is that "the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. § 1673) shall apply to enforcement of the judgment under Federal law or State law." 18 U.S.C. § 3613(a)(3). That statute, § 1673, imposes specific "restriction[s] on garnishment" of a debtor's employment wages, precluding any garnishment that exceeds 25 percent of the debtor's weekly earnings. § 1673(a).

In addition to detailing the scope of the government's authority to enforce fines and restitution orders, § 3613 states that a fine or

restitution order "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." § 3613(c). That provision further states: "The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)." *Id.*

Subsection (b) of § 3613 is entitled "termination of liability" and defines the duration of a defendant's liability to pay a fine or restitution. That provision states that an individual's obligation to pay either type of debt terminates on the later of: (i) 20 years from the entry of judgment, or (ii) 20 years from the individual's release from prison. *See* 18 U.S.C. § 3613(b). However, if the individual dies before the debt is satisfied or naturally expires, a fine automatically terminates, while responsibility for any unpaid restitution transfers to his estate. *Id.* In the case of unpaid restitution, "the lien provided in subsection (c) continue[s] until the estate receives a written release of that liability." *Id.*

## III.  The district court erred in concluding that the government's lien under § 3613(c) had not expired.

It is undisputed that the government filed its motion for a turnover order more than 20 years after Mr. Joseph's judgment was entered. *See*

11

ROA.598-99. The district court granted the government's motion based on the conclusion that its lien under § 3613(c) had not expired because, in the court's view, the lien provision is coextensive with the defendant's liability under § 3613(b). ROA.602-03 (concluding that a "lien under § 3613(c) continues for twenty years from the later of the entry of judgment or Defendant's release from imprisonment"). That reading is incorrect.

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (citation omitted). "And beyond context and structure, the Court often looks to history and purpose to divine the meaning of language." *Id.* (quotation marks, alteration, and citation omitted). All of these fundamental canons of statutory construction demonstrate that the lien established by § 3613(c) ends 20 years after the judgment is entered and, therefore, no longer existed at the time the government filed its motion requesting transfer of funds from Mr. Joseph's inmate account. Accordingly, the district court's order—which relied solely on § 3613(c)— must be reversed.

### A. Mr. Joseph's construction is supported by the text, structure, and context of § 3613(c).

Section 3613(c) states that any criminal fine, assessment, or restitution order "is a lien in favor of the United States" that "arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)." In other words, the lien ends *either* 20 years from the judgment *or* when the debt no longer exists, whether due to full payment, vacatur, or operation of § 3613(b). The statute does not state whether the lien expires on the earlier or later of those two dates. For the district court's interpretation to be correct, the statute would have to be read as the later of the dates, as it was undisputed that the 20-year date had already passed. But the most natural and only reasonable reading of the provision is that the lien expires upon the earlier of the two conditions—here, 20 years from the judgment date.

As an initial matter, Congress could not have intended for the lien expiration date to be the later of "20 years" or "until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)" because that would lead to absurd results. *See Atchison v. Collins*, 288 F.3d 177, 181 (5th Cir. 2002) (invoking the "common mandate of

statutory construction to avoid absurd results"). If that were the case, the government could retain a lien on a defendant's property after his fine or restitution was fully paid or even vacated—*i.e.*, when the defendant no longer owed any debt. To avoid that absurd result, the statute must be interpreted to mean the earlier of the two potential expiration dates. Thus, the government's lien on Mr. Joseph's property must have expired in 2021, and the district court erred in concluding otherwise.

A closer analysis of the text and structure of § 3613 confirms that reading. Subsection (b) provides that liability will terminate when the debtor dies or on "the later of 20 years from the entry of judgment or 20 years after the release from imprisonment." Subsection (c) provides that the government's lien "continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)." The language of § 3613(c) makes clear that the government's lien must expire on the *earlier* of 20 years from the judgment or when the liability ends, because the opposite interpretation renders the phrase "for 20 years or" superfluous. *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most basic interpretive canons" of statutory interpretation is that

"a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

The district court necessarily concluded that the lien expires on the *later* of 20 years from the judgment or the end of liability. But under that interpretation, the phrase "for 20 years or" becomes meaningless because expiration of the lien would always be dictated by the termination of liability. If the liability still exists 20 years from the judgment date, subsection (b) will necessarily determine the end date for both the liability and the lien. If the liability is satisfied, remitted, set aside, or terminated earlier than 20 years after the judgment, then that 20-year phrase is inoperative. Thus, § 3613(c) would have the exact same meaning if "for 20 years or" was removed, making that phrase superfluous and insignificant. Mr. Joseph's reading properly gives meaning to both potential expiration dates for the government's lien.[2]

---

[2] This interpretation of subsection (c) is also supported by the structure of subsection (b). That subsection is similarly silent about whether termination of liability is triggered by the *earlier* or *later* of two specified conditions—the death of the defendant, or the later of 20 years from the judgment or prison release—but it necessarily must mean the earlier. § 3613(b). Otherwise, liability would be a lifetime obligation for all defendants (which Congress could have stated but did not), and a deceased person could remain liable for a fine.

This interpretation is further supported by a comparison of § 3613(b) to § 3613(c). "Where Congress includes particular language in one section of a statute but omits it in another, it is presumed that Congress acts intentionally and purposely." *Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*, 968 F.3d 454, 466 (5th Cir. 2020) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)) (cleaned up). In § 3613(b), Congress defined a date certain for termination of liability as "the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person fined." Congress did not incorporate that language into § 3613(c) but instead stated only that a lien "arises on the entry of judgment and continues for 20 years" or until the liability ends. "Given that Congress, when it so chooses, knows how" to state that a legal right expires on the "later of" two dates, "the fact that Congress did not do so [in § 3613(c)] weighs" in favor of Mr. Joseph's interpretation. *United States v. Lauderdale Cnty., Miss.*, 914 F.3d 960, 965 (5th Cir. 2019).

Finally, "we do not lightly assume Congress adopts two separate clauses in the same law to perform the same work." *United States v. Taylor*, 142 S. Ct. 2015, 2024 (2022). The district court's interpretation of

§ 3613(c)'s duration makes it coterminous with § 3613(b). If that were Congress's intent, there would have been no reason to articulate distinct expiration dates in the two provisions—Congress could have simply stated that the lien "arises on the entry of judgment and continues until liability ends." The fact that Congress chose *not* to do that is additional evidence that the district court misread the statute, and the government's lien arising from Mr. Joseph's restitution judgment expired in 2021, 20 years after the entry of his judgment.

### B. Mr. Joseph's construction is further supported by the legislative history of § 3613.

The legislative history of § 3613 provides important context that further supports Mr. Joseph's reading of § 3613. Most notably, the statute originally *did* impose coextensive terms for the "liability" and "lien" on a debt, such that they always expired at the same time. *See* 18 U.S.C. § 3613 (1990). Before 1996, § 3613 applied only to fines and did not contain separate provisions for "termination of liability" and "liens," unlike the current version. Instead, it stated that "[a] lien becomes unenforceable *and* liability to pay a fine expires—(1) [20] years after the entry of the judgment; or (2) upon the death of the individual fined." § 3613(b) (1990) (emphasis added). The statute also stated that "[t]he lien

arises at the time of the entry of the judgment and continues until the liability is satisfied, remitted, or set aside, or until it becomes unenforceable pursuant to the provisions of subsection (b)." § 3613(a) (1990). Thus, both the liability and the lien on an unresolved debt expired 20 years from the judgment date or upon the debtor's death.

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act, which both created the Mandatory Victims Restitution Act ("MVRA") and revised § 3613 to make it applicable to restitution orders. Pub. L. 104-133, §§ 201-207, 110 Stat. 1214, 1227-39 (Apr. 24, 1996) ("AEDPA"). Significantly, the amendments to § 3613 included a new "termination of liability" provision that was separate from the "lien" subsection and extended the duration of liability to the current term— *i.e.*, "the later of 20 years from the entry of judgment *or 20 years after the release from imprisonment of the person fined*, or upon the death of the individual fined." § 3613(b) (1996) (emphasis added). The lien provision, on the other hand, remained nearly identical to the previous version but added the language specifying a term of "20 years."[3] *Compare* § 3613(a)

---

[3] The 20-year limit on the duration of liens had previously been incorporated by reference to subsection (b), which previously defined the "expiration of [a] lien."

(1990) ("The lien arises at the time of the entry of the judgment and continues until the liability is satisfied, remitted, or set aside, or until it becomes unenforceable pursuant . . . subsection (b)."), *with* § 3613(c) (1996) ("The lien arises on the entry of judgment and continues *for 20 years or* until the liability is satisfied, remitted, set aside, or is terminated under subsection (b).").

"When Congress amends legislation, courts must presume it intends the change to have real and substantial effect." *Ross v. Blake*, 578 U.S. 632, 641-42 (2016) (alterations and quotation marks omitted). Here, Congress created a new subsection to govern the termination of liability, specifically separating it from the lien provision, when it had previously treated them identically. Congress also explicitly incorporated the "20 year" expiration term, which previously applied to both the existence of liability and enforceability of the lien, into the new lien provision. That history shows that Congress intended to extend the period during which defendants are liable for their debts while leaving the duration of the government's lien unchanged.

Tellingly, Congress actually considered—but ultimately did not adopt—a different revision to § 3613 that *would* have extended both the

lien and liability terms in the same manner. *See* H.R. 665, 104th Cong. (Dec. 22, 1995), at 30:18. In H.R. 665, the proposed amendment to § 3613 would have maintained the original subsection (b) that applied to both liability and liens and simply extended that expiration term. If that revision had been adopted, § 3613(b) would read: "A lien becomes unenforceable and liability to pay a fine expires—(1) the later of 20 years after the entry of the judgment or 20 years after the release from imprisonment of the person fined or ordered to pay restitution; or (2) upon the death of the individual fined or ordered to pay restitution." The fact that this amendment was not incorporated into the law makes clear that "Congress specifically understood, considered, and rejected a version" of the statute would have extended the duration of the government's lien in the same manner that liability was extended. *See Warger v. Shauers*, 574 U.S. 40, 48 (2014). That history "confirms that [Congress's] choice of language was no accident"—it intentionally created a separate "termination of liability" provision, extending only a defendant's *liability* to 20 years from his release date.

Finally, it is clear from AEDPA's legislative history that the goal of its restitution-related provisions was to empower victims to obtain

restitution for themselves, which explains why Congress would extend the duration of a defendant's liability (*i.e.*, the amount of time victims can pursue restitution) while leaving the automatic lien created for the government unchanged. In addition to creating the MVRA, the bill dramatically expanded and revised § 3664, which previously related only to the procedures for determining—not enforcing—restitution. *See* 18 U.S.C. § 3664 (1996). Congress added several provisions related to victims' rights, such as notice requirements and the ability to accelerate payments under certain circumstances. *See, e.g.*, § 3664(d), (k), (n). And one of the new provisions created an avenue for victims to enforce restitution on their own, stating that the restitution order itself acts as a lien that the victim can register or record against a defendant's property. § 3664(m)(1)(B). Senator Grassley touted that provision as one of the most important aspects of the entire bill, explaining that the lien "gives victims a powerful tool [to] use to get restitution" themselves, "rather than relying on overworked prosecutors to do that job." Cong. Rec. S3379 (Apr. 16, 1996) ("This bill, I believe, provides victims of crime with a valuable and important way of vindicating their rights and obtaining restitution.").

It is clear from the text, structure, and legislative history of § 3613 that the 1996 revision was not intended to change the duration of the government's automatic lien on a defendant's property rights but rather to extend the amount of time that the defendant is indebted to the victim. The district court's turnover order must therefore be reversed.

## IV. The district court erred in concluding that a lien under § 3613(c) entitled the government to a turnover order.

Even if this Court were to conclude that the government had a valid, unexpired restitution lien under § 3613(c), the district court's turnover order must be reversed based on additional errors in the court's interpretation and application of § 3613. First, the order was neither sought nor granted "in accordance with the practices and procedures for the enforcement of a civil judgment under federal law or state law," as required by § 3613(a). Thus, the court had no legal basis to grant the motion and issue the order. Second, even if the government's enforcement were proper, § 3613(a)(3) precluded the district court from transferring nearly all of Mr. Joseph's inmate account funds, which "undisputedly" constituted prison wages. *See* ROA.599. Each of these errors independently mandates reversal of the court's turnover order.

### A. The district court's turnover order was not issued pursuant to any federal or state law, as required.

Section 3613 requires that any enforcement of a restitution order by the government must be "in accordance with" a federal or state law for the enforcement of civil judgments. § 3613(a). The government did not identify any statutory enforcement mechanism under either federal or state law, seemingly believing that it was entitled to the requested "turnover order" based on § 3613 alone. *See* ROA.557-60, 595. That is incorrect, and the district court erred in concluding that the government was entitled to the requested relief based solely on the existence of a lien. *See* ROA.600, 603.

Decades of this Court's caselaw make clear that the government must identify and use a specific federal or state enforcement statute to collect restitution—it is not enough to merely assert a lien under § 3613. *See, e.g.*, *United States v. Phillips*, 303 F.3d 548, 551 (5th Cir. 2002) ("The [Federal Debt Collection Procedures Act (FDCPA)] provides the most effective means for the Government to enforce private victim restitution orders because it provides a uniform system for prosecutors to follow rather than resorting to the non-uniform procedures provided by the states."); *United States v. Onyeri*, 996 F.3d 274, 282 n.7 (5th Cir. 2019)

("[T]he government often uses the garnishment provisions of the FDCPA to collect restitution obligations imposed in a criminal judgment."); *United States v. Berry*, 951 F.3d 632, 634 (5th Cir. 2020) ("To enforce the [restitution] judgment, the government applied under 18 U.S.C. § 3613 and 28 U.S.C. § 3205 [of the FDCPA] for a writ of garnishment."); *United States v. Mire*, 838 F.3d 621, 624-26 (5th Cir. 2016) (same); *Cardwell*, 842 F. App'x at 938-39 (relying on a federal tax law permitting the sale of property to satisfy a tax lien to conclude that "[f]oreclosing the [restitution] lien upon the [defendant's] property was a valid [enforcement] method available to the Government"). The government did not comply with that requirement.

Based on the government's filing and the district court's order, it appears that this misapplication of § 3613 arose from a misreading of this Court's precedent involving "turnover orders" issued under *Texas* state law. Both the government and court quoted language from *United States v. Rand*, 924 F.3d 140, 144 (5th Cir. 2019), stating that that there was "no basis for shielding" the defendant's commissary account "from a properly submitted turnover order." ROA.595-96, 603 n.32. But that case involved a specific "turnover statute" in Texas—a law inapplicable to

Mr. Joseph's proceedings in the Eastern District of Louisiana.[4] *Rand*, 924 F.3d at 143 ("This court has recognized Texas's Turnover Statute as one of the apparatuses by which criminal debt may be secured."); *see also United States v. Messervey*, 182 F. App'x 318, 320–21 (5th Cir. 2006) (unpublished) ("The Texas turnover statute, Tex. Civ. Prac. & Rem. Code Ann. § 31.002, enables a judgment creditor to obtain a turnover order regarding nonexempt property in the debtor's possession or subject to the debtor's control."). Indeed, all of the "turnover order" decisions by this Court arose from district courts in Texas. *See Rand*, 924 F.3d at 141; *Messervey*, 182 F. App'x at 319; *United States v. Diehl*, 848 F.3d 629, 635 (5th Cir. 2017); *United States v. Brewer*, 699 F. App'x. 318, 319 (5th Cir. 2017) (unpublished); *United States v. Butt*, 765 F. App'x 108, 108 (5th Cir. 2019) (unpublished).

Because the government did not even attempt to enforce Mr. Joseph's "in accordance with the practices and procedures for the

---

[4] *See* Fed. R. Civ. P. 69(a)(1) ("The procedure on execution [of a money judgment]—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."); Fed. R. Civ. P. 64 ("At the commencement of and throughout an action, every remedy is available that, *under the law of the state where the court is located*, provides for seizing a person or property to secure satisfaction of the potential judgment." (emphasis added)).

enforcement of a civil judgment under Federal law or State law," the district court lacked a legal basis to grant its motion. Accordingly, the turnover order must be reversed.

> ### B. Even if the government properly pursued enforcement of a valid lien, it was not entitled to seize all of Mr. Joseph's wages.

The district court also erred in concluding that the government was entitled to seizure of Mr. Joseph's entire inmate account under § 3613. As the district court acknowledged in its order, it was undisputed that "the funds in [his] inmate trust account constitute prison wages." ROA.599. Section 3613(a)(3) imposes a limitation on the government's enforcement of restitution judgments, requiring compliance with 15 U.S.C. § 1673, which is a Consumer Credit Protection Act statute that restricts garnishments. That statute limits garnishment of wages to a maximum of 25 percent of a debtor's weekly earnings. *See* § 1673(a).[5] Thus, even if the government had properly enforced the restitution order,

---

[5] The maximum garnishment is the lesser of: (1) 25 percent of the debtor's disposable earnings, or (2) the amount by which his disposable earnings exceed thirty times the federal minimum hourly wage in effect at the time. § 1673(a). "In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2)." *Id*. The statute identifies certain exceptions to that garnishment limit, none of which are relevant here—namely, garnishments stemming from the enforcement of state-issued orders, federal or state tax debts, and federal bankruptcy orders. *See* §§ 1673(b) and 1675.

it was not entitled to an order transferring the entirety (or all but $400) of Mr. Joseph's earnings. It could only transfer a maximum of 25 percent. *See United States v. Carson*, 55 F.4th 1053, 1059 (6th Cir. 2022) ("[S]ection 3613 liens are subject to the Consumer Credit Protection Act, which limits what the government may garnish.").[6] For this additional reason, the court's turnover order must be reversed.[7]

## V.    The district court also abused its discretion by seizing nearly all of Mr. Joseph's money.

Even if this Court could conclude that the district court properly issued a "turnover order," the order still must be reversed as an abuse of discretion because the amount was unreasonable and arbitrary in light of the circumstances of this case. *See Rand*, 924 F.3d at 142 (stating that

---

[6] Notably, the FDCPA—which the government commonly uses to enforce restitution judgments—incorporates the same 25 percent limit on wage garnishment. *See* 28 U.S.C. § 3205(a) (permitting garnishment of "nonexempt disposable earnings"); § 3002(9) (defining "nonexempt disposable earnings" as "25 percent of disposable earnings, subject to section 303 of the Consumer Credit Protection Act").

[7] Counsel below argued that the government failed cite any federal or state law authorizing the court to order BOP to turn over Mr. Joseph's trust account. ROA.586, 590. That sufficiently preserved this issue for appeal, as the crux of the issue is whether the government's requested relief is "in accordance with" federal or state law, and federal law limits the garnishment of wages for restitution. However, even if this Court determined that this issue was not sufficiently preserved, plain error review would be satisfied. The wage garnishment limitation is clear on the face of the statute, and the government's unlawful seizure of nearly all of Mr. Joseph's prison funds affected his substantial rights. Moreover, a district court's order to transfer nearly all of an inmate's financial resources to the government—contrary to the clear procedures and limitations set forth by Congress for such enforcements—seriously affects the fairness, integrity, and public reputation of judicial proceedings.

a court's decision to issue a turnover order may be reversed if the court "acted in an unreasonable or arbitrary manner").

It was undisputed that Mr. Joseph has been diligently paying on his restitution obligation for years, in accordance with his IFRP. ROA.570-72, 577, 585, 587-88. It was also undisputed that he is presently unemployed and therefore making his $50-per-quarter IFRP payments from his savings. ROA.587-88. Additionally, as the district court recognized, federal inmates must use funds from their trust accounts to pay for personal necessities that can only be purchased through the commissary. ROA.588-89, 604. Mr. Joseph and his counsel thus urged the Court to consider alternatives to transferring his entire account, such as increasing his monthly payments pursuant to § 3664(k) or even transferring half of his funds rather than the full account. ROA.589, 571. The district court did not consider or address either of those requests and, instead, ordered the transfer of all but $400 of Mr. Joseph's account.

That decision was arbitrary and unreasonable under these circumstances. Mr. Joseph is currently unable to work in his BOP facility, leaving him with no means of earning money to add to his account. Moreover, considering his current IFRP obligations, the $400

that the district court left in his account would only allow him to continue paying restitution for two years—assuming he does not spend any of that money on phone calls or personal necessities. After that, he will no longer be able to participate in the IFRP plan, resulting in a number of potential penalties and loss of privileges, not to mention his lack of funds to pay for telephone calls, hygiene products, and other personal effects in prison. *See* 28 C.F.R. 545.11(d). The government also provided no indication that the two financial institution victims to whom restitution is owed—if they even still exist more than two decades later—are experiencing any hardship that would justify taking nearly all of Mr. Joseph's money.

Considering all of these circumstances, it was unreasonable for the district court to order all but only $400 of Mr. Joseph's funds to be transferred for restitution payment. Indeed, the discovery of Mr. Joseph's accumulation of savings appears to be the type of "material change in . . . economic circumstances" that Congress contemplated when it created § 3664(k) as an avenue for courts to accelerate a defendant's payment of restitution, and that statute only allows courts to make such changes "as the interests of justice require." The district court provided no reason for deciding that almost all of Mr. Joseph's account should be turned over to

the clerk. Accordingly, even if this Court could conclude that the district court was authorized in issuing a turnover order, it should vacate the order because the amount transferred by the district court was unreasonable and arbitrary.

## CONCLUSION

Appellant Sidney Joseph respectfully requests that this Court reverse the district court's turnover order.

Respectfully submitted,

CLAUDE J. KELLY
Federal Public Defender
Eastern District of Louisiana

*/s/ Samantha Kuhn*
SAMANTHA J. KUHN
Assistant Federal Public Defender
500 Poydras Street, Suite 318
Hale Boggs Federal Building
New Orleans, Louisiana 70130
(504) 589-7930
Samantha_Kuhn@fd.org

# CERTIFICATE OF SERVICE

The undersigned certifies that on April 28, 2023, the foregoing Appellant's Brief was filed with the Clerk of Court via the electronic filing system, which will send an electronic Notice of Docket Activity to the following Filing Users:

> Kevin G. Boitmann, kevin.boitmann@usdoj.gov,
> Diane Hollenshead Copes, diane.copes@usdoj.gov, and
> Churita H. Hansell, churita.hansell@usdoj.gov,
> Assistant United States Attorneys.

"The court's electronic Notice of Docket Activity constitutes service of the filed document on all Filing Users." 5TH CIR. R. 25.2.5.

*/s/ Samantha Kuhn*
SAMANTHA J. KUHN
Assistant Federal Public Defender

# CERTIFICATE OF COMPLIANCE

The undersigned certifies that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,146 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point font for text and 12-point font for footnotes.

3. This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a)(5), 5th Cir. R. 25.2.13, and Fed. R. Crim. P. 49.1, because it has been redacted of personal data identifiers.

4. This electronic submission is an exact copy of the paper document, in compliance with 5th Cir. R. 25.2.1.

5. This brief is free of viruses because it has been scanned for viruses with the most recent version of Symantec Endpoint Protection, in compliance with 5th Cir. ECF Filing Standard A(6).

*/s/ Samantha Kuhn*
SAMANTHA J. KUHN
Assistant Federal Public Defender
Dated: April 28, 2023